UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE:  SUFFOLK UNIVERSITY COVID
REFUND LITIGATION

_____

THIS DOCUMENT RELATES TO:
ALL ACTIONS

Master File No.: 1:20-cv-10985-WGY

**<u>PLAINTIFFS' MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION</u>**

## I.     <u>INTRODUCTION</u>

"You get what you pay for," the saying goes.  But don't tell that to the thousands of

current and former Suffolk University ("Suffolk") students who paid full tuition and mandatory

fees for in-person classes and access to campus facilities and services that the students did not

receive for more than half of the Spring 2020 semester.  The best way to address the claims of

these students is to proceed with this litigation as a class action and certify the following

proposed class:

> All students enrolled in an in-person/on-campus based program or
> classes at Suffolk University ("Suffolk"), and not any separate
> Suffolk online programs only, before March 11, 2020, who paid
> Suffolk any of the following costs for the Spring 2020 semester: (a)
> Tuition, and/or (b) Fees (the "Class").

The question to be addressed in this case is not, as Suffolk attempts to portray it, whether

Suffolk should have conducted in-person classes and kept its campus open during a pandemic.

Instead, the question is, who should bear the financial burden of Suffolk's switch from in-person

to remote instruction and its campus shutdown, with the resulting unavailability of campus

facilities and services: the students and their families, many of whom invested their life savings

or borrowed heavily to obtain a college education for themselves or their children, or the

university that kept the tuition and fee money, without refunding any of it to account for the

difference in the value of the services provided?  Because the answer to this question will be the

same for all Class members, this case is clearly suitable for class treatment.

Suffolk seems to believe it can actively market its classroom experience and rich campus

life, promise its students a high level of faculty access and contact and a variety of services and

amenities, showcase and tout the classrooms and facilities to which enrolled students traditionally have access, but then fail to provide these services for more than half the semester and stick students with the full cost. The students who comprise the proposed class disagree.  This financial burden is something that Plaintiffs and members of the Class are simply not willing to accept.

If the question of whether Suffolk can charge students for in-person educational services and access to campus that it did not provide is answered in the negative, then the question becomes: what is the difference in value between the services Suffolk provided to its students during the Spring 2020 Semester and the services for which the students paid?  As is the case with the first question, this second question will have a common answer for all Class members.

 Other courts considering the same or similar questions have certified classes in cases against colleges and universities by students seeking refunds of tuition and/or fees for the Spring 2020 Semester. *See*, *e.g.*, *Little v. Grand Canyon Univ.*, 2022 WL 266726 (D. Az. Jan. 28, 2022); *Arredondo v. Univ. of La Verne*, No. 2:20-cv-07665-MCS-RAO (C.D. Cal. Feb. 8, 2022)[1]; *Cross v. Univ. of Toledo*, No. 2020-00274JD (Ohio Ct. Cl., Apr. 26, 2021);[2] *Alexander v. Florida Int'l Univ. Bd. of Trustees*, No. 2021-009869-CA-01 (44) (Miami-Dade County 11th Jud. Cir. Ct., December 30, 2021);[3] *Weiman v. Miami Univ.*, No. 2020-00614JD (Ohio Ct. Claims, December 13, 2021);[4] *Duke v. Ohio Univ.*, No. 2021-00036JD (Ohio Ct .Cl. Feb. 25, 2022);[5] *Waitt v. Kent State Univ.*, No. 2020-00392JD (Ohio Ct. Cl. Feb. 11, 2022).[6]

---

[1] Declaration of David Pastor ("Pastor Decl."), **Exhibit B**.
[2] Pastor Decl., **Exhibit C**.
[3] *Id*., **Exhibit D**.
[4] *Id*., **Exhibit E.**
[5] *Id*., **Exhibit F.**
[6] *Id*., **Exhibit G.**

## II.   FACTUAL BACKGROUND

A. **Suffolk Agreed to Provide In-Person Classes and Access to Campus**

Suffolk publicizes the importance of its campus and touts its facilities on its website and in its

marketing materials, including a particular emphasis on the classroom experience and the location

and benefits of its Boston campus, as indicated by the following statements on the Suffolk website:

- **Distinguished Faculty** provide i*ndividual attention to their students in small classes* while encouraging open, independent thinking and an appreciation of diverse cultures, perspectives and peoples.

- Students find many opportunities to combine their academic experience with hands-on experience through *internships, service learning and a broad range of extracurricular activities*

- Days, nights and weekends—Suffolk students are part of an *immersive living and learning experience in the heart of an international city*

- change your perspective and deepen your knowledge as *you learn in our classrooms and at the city's top employers.* A world of academic possibilities awaits at the College, all just steps away from everything that makes Boston the ideal place to learn and live.

- The Suffolk University campus is located right in the heart of downtown Boston and *brings one-of-a-kind city experiences into the classroom.*

- Since 1906, Suffolk University has been woven into Boston's thriving urban landscape, offering *a truly immersive environment in which to live, learn and explore.* It's the ideal location for Suffolk to provide students with the keys to successful lives and careers; access, opportunity and experience.

*Foti* First Amended Complaint and Demand for Jury Trial ("*Foti* Complaint"), ¶ 33,[7] quoting

from Suffolk's website (emphasis added) (footnotes omitted). *See also Durbeck* Amended Class

Action Complaint and Demand for Jury Trial ("*Durbeck* Complaint"),[8] ¶¶ 76, 81-86. As part of

its marketing, Suffolk linked its Boston campus with the surrounding city in touting the benefits

---

[7] ECF No. 6 in 20-11581-WGY
[8] ECF No. 20 in 20-110985-WGY.

of the overall learning experience as a Suffolk student:

> When you step out of one of our buildings-one of the many benefits of going to school in downtown Boston-you're stepping into the vibrant heart of the city, with all of the action and opportunity that comes with it.  From the global firms of the Financial District to the halls of the State House on Beacon Hill, you'll find internships, career paths and professional connections waiting for you.

*Durbeck* Complaint, ¶ 86, quoting from Suffolk's website.  Suffolk also extolled the benefits of its campus facilities and services and its extra-curricular activities, including its residence halls, dining services and options, counseling, health & wellness center, fitness center, athletics and student clubs and organizations.  *Durbeck* Complaint, ¶ 84.  Many, if not most of these facilities and services can only be accessed in-person

After students are accepted to Suffolk, the marketing continues, in order to entice admitted students to enroll.  *See*, *e.g.*, *Durbeck* Complaint, ¶¶ 94-99.  These marketing efforts echo many of the statements quoted above about Suffolk's Boston campus and its location in and relationship to the surrounding city, including on the DESTINATION: SUFFOLK page on Suffolk's website:

> Suffolk checks off all the boxes:
> - A vibrant campus life filled with activity and outside-the-classroom learning
> - Career-making internships just a walk or a T ride away
> - 60+ undergraduate majors to choose from
> - 120+ student clubs to get involved in
> - From sports to service learning to studying abroad, you really can **do it all at Suffolk**.

*Durbeck* Complaint, ¶ 94 (bold in original).

Suffolk's agreement to provide in-person classes is further evidenced by its registration process, which again is common to all Suffolk students.  For example, when students log in to their MySuffolk account during the registration period, to select their courses, the in-person classes are listed not only by description, but also by physical classroom location and meeting time.[9]  Once

---

[9] *Durbeck* Complaint, ¶ 111; *Foti* Complaint, ¶ 29.

they register, the students in Suffolk's on-campus courses and programs are subject to strict personal attendance requirements, provided for in departmental policies and handbooks, further evidence of the agreement to provide in-person instruction.[10]

As this Court has noted in its decision on the motions to dismiss, Plaintiffs have alleged an implied-in-fact contract derived from the promotional and marketing statements, viewed in connection with the students' payment of fees and tuition, and "Plaintiffs' registration for and attendance at on-campus classes prior to the campus closure." *Durbeck v. Suffolk Univ.*, 547 F. Supp. 3d 133, 145 (D. Mass. 2021). All of these elements, the promotional statements, the payment of tuition and fees, the registration process, and the prior course of conduct with respect to on-campus classes, are common to all Class members.

**B**. **Suffolk has two Distinctly Different Programs: In-Person and Online**

Suffolk does offer online programs, and those programs are separate and distinct from its in-person programs; the distinctions between the two are evident in the marketing of the different programs, the registration process. and the tuition charged for each program.[11] Suffolk separately markets its online programs to prospective students through its website and marketing brochures and other materials, as it does with the in-person programs.[12] Suffolk even has a separate website dedicated to the "The Suffolk Online Experience," where it offers a selection of online graduate and undergraduate courses.[13] The in-person/online distinction is again made clear in the orientation for new students (orientation for those taking online courses consists of one hour-long session, as opposed to the more extensive in-person orientation)[14]and in the process of registration for

---

[10] *Durbeck* Complaint, ¶ 112.
[11] *See id.*, ¶¶ 76-80, 106-111, 119, 123; *Foti* Complaint, ¶¶ 27-32, 40, 67, 69.
[12] *See* SUFFOLK_00000066-00000264 (Suffolk's Spring 2020 course search/course list for prospective students, in which the in-person courses list the campus, *e.g.*, "Boston Campus," in the location column and the online courses list the location as "online."). Pastor Decl., **Exhibit H**.
[13] *Durbeck* Complaint, ¶ 79.
[14] *Id.*, ¶¶ 103-105.

classes.[15]  The online courses and in-person courses are differentiated by their descriptions in the academic catalogs and other materials; when students register online through MySuffolk, each course has a location designation: for in-person courses, the designation has a classroom location where the class meets, while "[o]nline courses are designated as WEB under the location tab."[16] Finally, there is a sharp difference in tuition, with the online tuition being significantly lower than in-person tuition for the same course or program.  As an example, for the 2019-2020 academic year, the online MBA program had a per credit tuition rate of $1,171, while Suffolk charged $1,519 per credit for the traditional in-person MBA program.[17]  Further, each of Suffolk's academic programs is listed separately on Suffolk's student financial services website with the specific tuition and fees charged for the specific program; and Suffolk has a separate website dedicated to tuition and fees for its online courses and programs.[18]

Further, in a futile attempt to rationalize the fact that Suffolk did not offer discounts or refunds to students switched from in-person programs to remote instruction during Spring 2020, Suffolk acknowledges that the online and in-person programs are priced differently ant that it is charging students a tuition rate for an in-person program, while failing to provide them with in-person instruction:

> **My courses are online [because of the switch to remote instruction] but I pay a higher tuition rate than online programs?**
>
> If you are not in an online program, your tuition rate is different.  You are charged based on the program you are enrolled in.  Each program has its own individual structure, offerings and support and the tuition rate reflects that.  The pandemic may have caused you to have online courses, but your program has not changed.[19]

---

[15] *Id.*, ¶¶ 106-107, 111-112.
[16] *Foti* Complaint at 29, quoting from https://www.suffolk.edu/business/degrees-programs/undergraduate-services-resources/online-courses.
[17] *Id.*, ¶ 31; *see also Durbeck* Complaint, ¶¶ 107-111.
[18] *Id.*, ¶¶ 107-109.
[19] *Foti* Complaint, ¶ 32, quoting from https://www.suffolk.edu/about/directory/bursars-office/fall-2020-bursars-faq.

### C. Plaintiffs Enrolled in and Paid for Suffolk's In-Person Program

Plaintiffs paid tuition for and enrolled in Suffolk's in-person program.  While, as discussed above, Suffolk offers online programs, Plaintiffs Anna Foti and Durbeck purposefully did not enroll in an online program, but instead enrolled in in-person programs.[20] Plaintiff Anna Foti paid $8,521 in tuition for the Spring 2020 Semester at Suffolk.[21] Plaintiff Durbeck also paid tuition for the Spring 2020 Semester at Suffolk.[22]

Plaintiffs paid mandatory fees to Suffolk for the Spring 2020 Semester for access to campus facilities and services.  Plaintiff Durbeck paid the activity fee ($90) and the technology fee ($55), as did Anna Foti.[23]  Throughout their time at Suffolk (prior to March 18, 2020), Plaintiffs attended in-person classes and had access to campus facilities and services.[24]

### D. In March 2020, Suffolk Closed Its Campus and Cancelled All In-Person Classes

In the middle of the Spring 2020 Semester, however, Suffolk cancelled its in-person classes and severely restricted access to its campus in response to the Covid-19 pandemic. On March 11, 2020, Suffolk announced that it was moving all classes online for the remainder of the semester, starting March 18, 2020.[25]  All classes were held remotely for the remainder of the Spring 2020 semester.[26]  Suffolk began closing its campus facilities and cancelling in-person student activities and services on or about March 16, 2020, and the campus was officially closed on March 24, 2020, as announced in a March, 2020 Student Advisory.[27]  In its communications with students, Suffolk

---

[20] *See Foti* Complaint, ¶¶ 11, 30; *Durbeck* Complaint, ¶ 22; Declaration of Anna Francesca Foti (" Foti Decl."), ¶ 12; Declaration of Julia Durbeck ("Durbeck Decl."), ¶ 11.
[21] Foti Decl., ¶ 3, **Exhibit. 1.**
[22] Durbeck Decl., ¶ 2, **Exhibit 1**.
[23] *Id*.., ¶ 2; Foti Decl., ¶ 3, **Exhibit  1**.
[24] Foti Dec., ¶ 13; Durbeck Decl., ¶ 12.
[25] *Foti* Complaint, ¶¶ 3,34; *Durbeck* Complaint, ¶ 46.
[26] *Foti* Complaint, ¶ 5, 35.
[27] *Durbeck* Complaint, ¶¶ 47-49; *Foti* Complaint, ¶ 5, 36.

officials acknowledged that transitioning to remote instruction was not what the students signed up for and that it disrupted the students' education: "This is a major decision for the university and it was not made lightly. Close, in-person collaboration between students, faculty and staff is something we value greatly as a hallmark of the education we provide at Suffolk."[28]

Even though Suffolk did not offer in-person classes or full access to its campus from after March 9, 2020 through the end of the Spring 2020 Semester[29] (amounting to approximately 55% of the semester),[30] it did not offer any refunds to students for tuition or fees.[31]  *See* Defendant Suffolk University's Supplemental Responses to Plaintiffs' First Set of Interrogatories ("Suppl. Int. Responses"), Response to Interrogatory No. 6 ("Suffolk did not issue refunds, credits, or other monetary adjustments for tuition or mandatory student fees as a result of COVID-19 or the transition to remote learning in the Spring, 2020 semester").[32]

## III.   ARGUMENT

### A. Legal Standard

A party seeking class certification must first satisfy all of the requirements of Fed. R. Civ. P. 23(a). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). Rule 23(a) requires a showing that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(1)– (4). The party moving for class certification must also satisfy at least one of the three requirements in Rule 23(b).

---

[28] *Durbeck* Complaint, ¶ 53, quoting March 11, 2020 Student Advisory.  *See also Foti* Complaint, ¶ 45.
[29] *Foti* Complaint, ¶¶ 34-35.
[30] *Durbeck* Complaint, ¶ 50.
[31] *Durbeck* Complaint, ¶ 51; *Foti* Complaint, ¶ 7 (quoting March 11, 2020 Student Advisory).
[32] A copy of the Suppl. Int. Responses is submitted herewith as Pastor Decl., **Exhibit I**.

*Overka v. American* Airlines, *Inc.*, 265 F.R.D. 14, 17 (D. Mass. 2010). Plaintiffs here seek certification under Rule 23(b)(3), which requires that (i) common questions of law or fact predominate (predominance), and (ii) the class action is the superior method for adjudication (superiority). *Id.* "When the legal and factual premises of a case are disputed, the court may probe behind the pleadings to formulate some prediction as to how specific issues will play out in order to assess whether the proposed class meets the legal prerequisites for certification." *Donovan v. Philip Morris USA, Inc.*, 268 F.R.D. 1, 8 (D. Mass. 2010). "Nevertheless, the class certification proceeding must not become a mini trial on the merits." *Id.* (internal quotation marks omitted).

In considering class certification, courts also consider the purpose and policy behind the class action device. As the Court in *Donovan* observed:

> The class action has both procedural and substantive purposes. It is designed to enable a large number of individuals to bring a single proceeding-plainly a more convenient way to deal with a controversy than advancing in a fragmentary fashion with multiple actions.

> The class action also serves the substantive goal of vindicat[ing] ... the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.

*Id.* (internal quotation marks omitted). *See also Smilow v. Southwestern Bell Mobile Systems, Inc.*, 323 F. 3d 32, 41-42 (1st Cir. 2003) (same).

## B. Plaintiffs Have Satisfied all Prerequisites of Rule 23(a)

### 1.    The Class is so numerous that joinder is impracticable.

To certify the Class, this Court must determine whether Plaintiffs' proposed "class is so numerous that joinder of all members is impracticable." The First Circuit has characterized the numerosity requirement as a "low threshold." *Garcia-Rubiera v. Calderon*, 570 F. 3d 443, 460 (1st Cir. 2009). There is no minimum number required to satisfy this requirement, but it is generally accepted that a class exceeding 40 members is sufficiently numerous. *Id.* Here, the proposed

Class, consisting generally of students enrolled in in-person, on campus programs at Suffolk for the Spring 2020 semester, is so numerous that the joinder of all members is impracticable. According to available information, there were approximately 7,200 students enrolled at Suffolk for Spring 2020,[33] more than sufficient to satisfy the numerosity requirement.

### 2. Defendant's conduct presents factual and legal issues common to Plaintiffs and all class members.

Rule 23(a)(2)'s commonality requirement is a "low hurdle," "requir[ing] only that the plaintiffs show that there are questions of law or fact common to the class." *Donovan*, 286 F.R.D. at 10 (internal quotation marks omitted).  Commonality does not require that all questions of law and fact be common in order to satisfy the rule, but rather, it "requires only the existence of a single issue be common to all members of the class." *In re McKesson Governmental Entities Average Wholesale Price Litig.*, 767 F. Supp. 2d 263, 269 (D. Mass. 2011).  Courts have routinely found the commonality requirement to be satisfied "where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Overka*, 265 F.R.D. at 18 (internal quotation marks omitted); *Garcia v. E.J. Amusements of N.H., Inc.*, 98 F. Supp. 3d 277, 286 (D. Mass. 2015) (same).

Within these parameters, the commonality requirement is easily satisfied here.  This case centers on Defendant's conduct and does not depend at all on the individual circumstances of any individual Plaintiff or Class member.  The challenged conduct on the part of Suffolk, breaching its contracts with the students to provide an in-person, on-campus education while at the same time collecting and retaining the full amount of tuition and fees paid in advance, was directed toward

---

[33] *See* https://classactionsreporter.com/suffolk-university-no-tuition-reductions-for-spring-or-fall-2020-class-action/ (last accessed March 20, 2022).

and affected all Class members. All Class members paid tuition and mandatory fees for an in-person, on-campus education, registered for and selected in-person classes using the same registration process, attended in-person classes and had access to campus facilities and services for a portion of the Spring 2020 semester and during previous semesters at Suffolk and were switched to remote instruction and denied access to campus in the same manner and at the same time, from March, 2020 through the remainder of the Spring 2020 semester.  In addition, with one very minor exception, Class members did not receive refunds of tuition or mandatory fees for that semester.  A list of specific common issues is contained in each of the Complaints.  *See* Durbeck Complaint, ¶ 62; Foti Complaint, ¶ 57.   Given that the common questions of law and fact are capable of classwide resolution, the commonality requirement of Rule 23(a)(2) is easily satisfied. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). These common issues are subject to a common answer, proven through the introduction of common proof.

### 3.      Plaintiffs' claims are typical of the claims of the proposed Class.

Rule 23(a)(3)'s typicality requirement is satisfied where the plaintiffs show that their claims are "typical of the claims … of the class." Fed. R. Civ. P. 23(a)(3).  "'The central inquiry in determining whether a proposed class has typicality is whether the class representatives' claims have the same essential characteristics as the claims of the other members of the class.'"  *Garcia*, 98 F. Supp. 3d at 288, quoting *Barry v. Moran*, 2008 WL 7526753 at *11(D. Mass. Apr. 7, 2008); *In re Neurontin Mktg, Sales Practices & Prods. Liab. Litig*., 257 F.R.D. 315, 321 (D. Mass. 2009) (same). "To satisfy the typicality requirement, the claims of all class members need not be identical, but they all must arise out of the same practice and must be based on the same legal theory."  *Overka*, citing, *inter alia*, *In re Relafen Antitrust Litig*., 231 F.R.D. 52, 69 (D. Mass. 2005).

Here, Plaintiffs and the other Class members each contracted with Defendant for in-person, on-campus instruction and use of campus facilities and services in exchange for Plaintiffs' and Class members' payments of tuition and mandatory fees. Suffolk stopped providing in-person, on-campus instruction and access to campus facilities and services to Plaintiffs and each member of the Class in March of 2020. As alleged in the Complaints, Plaintiffs and the other members of the Class were all exposed to the same statements in Suffolk's marketing and promotional materials about the benefits of classroom instruction and the facilities and services available on the university's campus, both before and after their acceptance to Suffolk. Thereafter, Plaintiffs (i) enrolled at Suffolk, (ii) registered for classes and (iii) paid their tuition and mandatory fees for on-campus, in-person instruction and use of campus facilities and services. Plaintiffs and other Class Members were then denied the in-person, on-campus instruction and access to campus facilities and services that Suffolk promised to provide after it switched to fully remote online learning and closed its campus. It is clear that Plaintiffs' claims "have the same essential characteristics," "arise out of the same practice" on the part of Suffolk and are "based on the same legal theory" as the claims of the other class members and that, therefore, the typicality element is satisfied.[34]

### 4.    Plaintiffs are adequate class representatives, and their counsel will adequately represent the interests of the Class.

Rule 23(a)(4) requires that the Class representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The First Circuit has established a two-part test that must be satisfied in order to establish adequacy of representation: 1) that the interests of the class representatives will not conflict with the interests of the class; and 2) that counsel selected by the class representatives is qualified, experienced, and able to vigorously prosecute the litigation on behalf of the class. *Andrews v. Bechtel Power Corp.*, 780 F. 2d 124, 130 (1st Cir. 1985). "The

---

[34] *See* cases cited above in this section.

adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Garcia*, 98 F. Supp. 3d at 289 (internal quotation marks omitted).

Plaintiffs' adequacy is demonstrated by the fact that they clearly understand their responsibility as Class representatives and they have spent time communicating and consulting with their counsel.[35] In addition, Plaintiffs are represented by counsel with substantial experience prosecuting cases on behalf of Class members.[36]

Here, there is also no evidence of any conflicts of interest between Plaintiffs and Class members. Plaintiffs Durbeck and Anna Foti were undergraduate students during the Spring 2020 semester, and  Suffolk charged Plaintiffs and the Class standard tuition rates and Mandatory Fees, based on the program in which they enrolled, for the Spring 2020 semester.[37] Plaintiffs seek, for themselves on behalf of the Class, the return of a portion of the tuition and mandatory fees prorated for the portion of the Spring 2020 semester after Suffolk switched all classes to remote instruction and closed all campus-based services. Given the identical nature of the claims among Plaintiffs and the Class members, there is no potential for conflicting interests between the named Plaintiffs and the Class.

Further, Plaintiffs' counsel are clearly adequate, as set forth more fully below. Accordingly, the adequacy of representation requirement of Rule 23(a)(4) is satisfied.

## C.  The Proposed Class Satisfies the Requirements of Rule 23(b)(3)

Under Rule 23(b)(3), a Class may be certified if "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class

---

[35] *See* A. Foti Decl., ¶¶ 6,7 9, 10; Durbeck Decl., ¶¶ 6, 9, 10, 15, 16.
[36] *See* discussion of Plaintiff's counsel in Section **D** below.
[37] *See* Exhibit 1 to Defendant Suffolk University's Second Supplemental Responses to Plaintiff's First Set of Interrogatories **[get correct title]** Pastor Dec., **Exhibit J**.

action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). For the reasons set forth below, Plaintiffs satisfy both the predominance and superiority requirements.

### 1.    Common Issues Predominate

"The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re McKesson*, 767 F. Supp. 2d at 271 (internal quotation marks omitted). In evaluating predominance, the First Circuit has found that "Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *Smilow*, 323 F. 3d at 39. The predominance inquiry "calls upon courts to give careful scrutiny to the relation between common and individual questions in a case." *Baker v. Equity Residential Mgmt, L.L.C.*, 390 F. Supp. 3d 246, 259 (D. Mass. 2019), quoting *Tyson Foods, Inc. v. Bouaphakeo*, -- U.S.---, 136 S. Ct. 1036, 1045 (2016). It is beyond debate that a class can satisfy the predominance element, even where the claims asserted by the class raise some individual issues. *Baker,* 390 F. Supp. 3d at 260, citing *Smilow*, 323 F. 3d at 39. Rule 23(b)3) "does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof." *Baker*, at 260 (internal quotation marks omitted). For example, courts universally recognize that individual issues relating to damages do not preclude a finding of predominance. *See, e.g., Baker*, 390 F. Supp. 3d at 260 ("[t]he fact that some individual analysis of damages is required . . . does not by itself defeat predominance"); *Garcia*, 98 F. Supp. 3d at 291, quoting *Smilow*, 323 F. 3d at 40 ("Courts have repeatedly held that '[w]here . . . common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied, even if individual damages issues remain'").

Here, the common issues—including whether Defendant breached its contracts with

14

Plaintiffs and the members of the Class by failing to provide them with in-person, on-campus instruction and use of facilities after March of 2020—clearly predominate over any individual issues that may exist. Each Class member suffered the same harm for the same amount of time due to the same actions or inactions of Suffolk. Further, the contractual agreements between each student Class member and Suffolk—that the student would receive in-person, on-campus instruction, educational services, and use of campus facilities in exchange for payment of tuition and fees—are effectively identical. Similarly, the nature of Defendant's breach is the same for each member of the Class, regardless of the specific school or program they enrolled in, their academic major, scholarships, or any other ancillary criteria—Defendant failed to provide in-person, on-campus instruction, educational services, or use of campus facilities AND Defendant elected to retain the entire amount of tuition paid by the Class.  Numerous courts have granted class certification in a COVID-related refund cases and have found predominance to be satisfied on the same facts as presented here.  *See, e.g., Alexander* at 12:

> The Court finds that common issues predominate over individual issues in this case because Plaintiffs' claims are based on FIU's failure to provide students with services they paid for with their fees . . . The case poses the same basic legal question for all class members: whether (a) FIU breached its express contracts with students by failing to provide them with the services itemized in their Statement of Charges, and (b) FIU was unjustly enriched by retaining the amounts for the fees that, in all fairness, should have been returned to students.

*See also Cross*, at 8 ("[w]hether Cross, as well as those similarly situated, are entitled to remediation for tuition, room and board costs, and fees are questions of law or fact common to Cross and those similarly situated" and those questions "predominate over" any individual questions); *Weiman* at 9; *Waitt* at 9; Little, 2022 WL at a*7 ("[the campus] closures, and the failure to refund any money for the fees students paid, affected all students").

 The specific amount of damages will vary individually among Plaintiffs and Class members, but damages can be calculated for the class based on a common method.  The damages calculation

depends on two variables: 1) the portion of the Spring 2020 semester during which Suffolk conducted all classes on a remote basis;[38] and 2) the difference in value between online courses and in-person courses.[39]  *See Arredondo*, at 7-8 ("Plaintiff presents an articulable theory of damages that is capable of classwide resolution.  For the period class members took online classes in lieu of in-person classes, damages are the difference between what each class member paid and the market value of the education they received"); *In re Boston Univ. COVID-19 Refund Litig.*, No. 1:20-cv-10827-RGS [ECF 72] (D. Mass. Aug. 20, 2021), wherein Judge Stearns noted, "as to damages Plaintiffs have already identified how BU valued the receipt of online credits in comparison to in-person credits, so determining the amount of any award will be as simple as calculating the difference between the two values and pro-rating that difference to account for the portion of the semester each plaintiff spent on campus prior to the campus shutting down."[40]  Because Suffolk, like Boston University, offers online programs and courses, a similar method for assessing the market value of online instruction will be used in this case.[41]

Contrary to arguments that may be made by Suffolk, there are no individual issues concerning students' exposure to Suffolk's marketing and promotional materials that would preclude predominance.  Such an argument was made by the defendant in *Duke*, and flatly rejected by the Court:

> The court does not need to examine which student was exposed to which advertisement or discern each student's inner thoughts when they signed up for classes.  The terms of an implied contract can be inferred from the parties' external conduct . . . the Court does not need to delve into the weeds of which student was exposed to which-if any-advertisements to

---

[38] Plaintiffs have estimated this as 55%, by calculating the number of days during which all classes were remote as a percentage of the total number of days in the semester.

[39] That difference, expressed as a percentage, can be applied to the total net tuition paid by Class members for the semester, and the resulting figure can then be pro-rated for the portion of the semester in which only online classes were offered, to arrive at a class damage figure.  A similar process can be used to obtain a class damage figure for fees.

[40] *See also Arredondo* at 8 ("[a] simple comparison of [the value of in-person classes-measured by the tuition actually paid] and the market value of online classes will yield the measure of damages for each student").

[41] Plaintiffs are fully cognizant of the impact of *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) on the predominance inquiry.  However, in the aftermath of *Comcast*, most courts—including this Court—have agreed that Comcast "did not hold that a class cannot be certified under Rule 23(b)(3) simply because damages cannot be measured on a classwide basis . . . [i]nstead, under *Comcast*, a model for determining classwide damages relied upon to certify a class under Rule 23(b)(3) must actually measure damages that result from the class's asserted theory of injury." *Baker*, 390 F. Supp. 3d at 263.  *See also In re Nexium Antitrust Litig.*, 297 F.R.D. 168, 183 (D. Mass. 2013), *aff'd, In re Nexium Antitrust Litig.*777 F. 3d 9 (1st Cir. 2015) (same).

know that a student who signed up for in-person classes would expect them to be in person, in line with the traditional college experience.

*Id*. at 14-15.  The same is true here.

### 2.      A Class Action the Superior Method of Adjudication

Rule 23(b)(3) requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy."  *Id*.  "The core purpose of Rule 23(b)(3) is to vindicate the claims of consumers and other groups of people whose individual claims would be too small to warrant litigation."  *Smilow*, 323 F. 3d at 41; *Garcia*, 98 F. Supp. 3d at 292 (same).  A key factor in the superiority analysis is manageability,[42] and a "class action has to be unwieldy indeed before it can be pronounced an inferior alternative . . . to no litigation at all."  *In re McKesson*, 767 F. Supp. 2d at 271.  Here, there are no manageability issues that would preclude class treatment from being the superior method of litigation.  Without a class action, thousands of students would need to litigate their claims against Suffolk individually, flying in the face of "'[t]he policy at the very core of the class action mechanism [which] is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.'"  *Little*, 2022 WL at 266726 at *7, quoting *Amchem*, 521 U.S. at 617.[43]

### 3.      The Class is ascertainable

Ascertainability is not explicitly referenced in Rule 23, but there is "an implicit prerequisite to class certification . . . that a class exists—in other words, it must be administratively feasible for the court to determine whether a particular individual is a member."  *Donovan*, 268 F.R.D. at 9 (internal quotation marks omitted).  "To be ascertainable, all class members need not be identified

---

[42] The other factors to be considered in the analysis are: the class members' interests in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; and the desirability or undesirability of concentrating the litigation of the claims in the particular forum.  Rule 23(b)(3)A-C.
[43] *See also Donovan*, 268 F.R.D. at 8; *Smilow*, 323 F. 3d at 41-42.

at the outset; the class need only be determinable by stable and objective factors." *Id.* (internal quotation marks omitted). The proposed Class here is easily ascertainable, as it is based on objectively identifiable factors: all students enrolled in an in-person/on-campus based program or classes at Suffolk for the Spring 2020 semester who paid tuition or fees to Suffolk. Class membership can easily be determined by Suffolk's records, which track the students enrolled at the university for the Spring 2020 semester, the programs in which they enrolled and their payment records.[44]

### D. The Court Should Appoint Plaintiffs as Class Representatives ad Their Counsel as Class Counsel

Pursuant to Rule 23(g), Plaintiffs request their counsel be appointed to represent the Class and be appointed as "Class Counsel." This factor focuses "on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018). Rule 23(g)(1)(A) provides, in relevant part, that in appointing Class counsel the Court must consider:

(i)  the work counsel has done in this action to identify or investigate potential claims;
(ii) counsel's experience in handling class actions, other complex litigation, and the type of claims asserted in this action;
(iii) counsel's knowledge of the applicable law; and
(iv) the resources that counsel will commit to representing the class.

While no single factor under Fed. R. Civ. P. 23(g)(1) "should necessarily be determinative," Advisory Committee Notes (2003), the investigative and analytical efforts of counsel can be a deciding factor:

> In a case with a plaintiff class, the process of drafting the complaint requires some investigatory and analytical effort, tasks that strangers to the action most likely will not have undertaken. All other things being equal, when an attorney has performed these or other investigative and analytical tasks before making the application for appointment, he

---

[44] *See Alexander* at *6 (the proposed class is ascertainable because it is objectively defined and because "the Statements of Charges, which the university sends to all students, show which fees were charged and paid by Plaintiffs and all Class members"). The same is true here.

> or she is in a better position to represent the class fairly and adequately than attorneys who did not undertake those tasks.

MOORE'S FEDERAL Practice § 23.120(3)(a) (3d ed. 2007) (emphasis added).

Here, Plaintiffs have assembled a reputable team consisting of counsel experienced in class action and consumer litigation, attorneys who bring to the table a high level of skill and experience and sufficient resources to effectively litigate this case and vigorously represent Plaintiffs and the Class.

Plaintiffs' counsel's work in, among other things, identifying and investigating the claims in this case, preparing thorough and detailed complaints, successfully opposing motions to dismiss (including written oppositions and oral argument), reviewing thousands of pages of documents and preparing the motion for class certification and supporting papers, demonstrates that they have and will continue to represent the proposed Class fairly and adequately.[45]   These efforts are precisely the type of work that the Advisory Committee Notes to Rule 23 state that the Court should consider when appointing class counsel.

Concerning tuition refund litigation generally, the Anastopoulo Law Firm ("ALF") is believed to have filed, on April 8, 2020, the second tuition refund case in the nation, and thereafter filed the third, fifth, and sixth complaints of this type nationally. Since then, thousands of students throughout the country have contacted the attorneys at ALF regarding bringing tuition refund lawsuits against their university for COVID-related closures. Currently, ALF has approximately 40 such cases pending throughout the country in various state and federal courts and is in contact with hundreds of students at those schools.  ALF has been a leader and innovator in this area and has taken the risk to represent students across the country in these first-of-their-kind lawsuits. For

---

[45] *See* generally Declaration of Roy T. Willey IV ("Willey Decl.") and Pastor Decl., submitted herewith.

example, Eric M. Poulin and Roy T. Willey IV of ALF have already been appointed co-lead counsel in the numerous other COVID refund cases.[46]

David Pastor of Pastor Law Office, LLP ("PLO") has more than four decades of experience as a practicing attorney, with approximately half of that time concentrating on class action litigation, primarily representing consumers, and has litigated these cases in state and federal courts, not only in Massachusetts, but also in many other jurisdictions around the country.  Mr. Pastor has been appointed as class counsel in numerous cases and has litigated cases resulting in significant court decisions and opinions.[47]

Thus, Plaintiffs propose the appointment of the Anastopoulo Law Firm, LLC and Pastor Law Office, LLP, as Class Counsel pursuant to Fed R. Civ. P. 23(g).

## IV.    CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion, certify the proposed Class and appoint Plaintiffs Julia Durbeck and Anna Foti as Class representatives and their counsel as Class Counsel.

Dated: March 21, 2022                          Respectfully Submitted:


                                               */s/ David Pastor*_____
                                               David Pastor (BBO # 391000)
                                               **PASTOR LAW OFFICE, LLP**
                                               63 Atlantic Avenue, 3d Floor
                                               Boston, MA 02110
                                               Tel.: (617) 742-9700
                                               Fax: (617) 742-9701
                                               dpastor@pastorlawoffice.com

---

[46] *See* Willey Decl., ¶ 6.
[47] *See* Pastor Decl., ¶¶ 4-6, **Exhibit A**.

Richard E. Levine (BBO 672675)
**STANZLER LEVINE, LLC**
65 William Street, Suite 205
Wellesley, MA 02481
Telephone: (617) 482-3198
Email:  rlevine@stanzlerlevine.com

Roy T. Willey, IV (admitted *pro hac vice*)
Eric M. Poulin (admitted *pro hac vice*)
Blake G. Abbott (admitted *pro hac vice*)
**ANASTOPOULO LAW FIRM LLP**
32 Ann Street
Charleston, SC 29403
Telephone: (843) 614-8888
Email:  eric@akimlawfirm.com
roy@akimlawfirm.com
blake@akimlawfirm.com

***ATTORNEYS FOR PLAINTIFFS***

## <u>CERTIFICATE OF SERVICE</u>

I, David Pastor, hereby certify that on March 21, 2022, a true and correct copy of the foregoing Plaintiffs' Memorandum in Support of Class Certification was filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.


*/s/ David Pastor*_____ ____
David Pastor