UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                            )
                            )
IN RE: SUFFOLK UNIVERSITY COVID   )
REFUND LITIGATION           )
                            )          CIVIL ACTION
                            )          NO. 20-10985-WGY
_____)
```

YOUNG, D.J.                                    October 11, 2022

**MEMORANDUM AND ORDER**

## I.    INTRODUCTION

The Plaintiffs propose certifying the following class:

> All students enrolled in an in-person/on-campus based
> program or classes at Suffolk University ("Suffolk"),
> and not any separate Suffolk online programs only,
> before March 11, 2020, who paid Suffolk any of the
> following costs for the Spring 2020 semester: (a)
> Tuition, and/or (b) Fees (the "Class").

Pl.'s Mem. Supp. Class Cert. ("Pl.'s Mem. Class Cert.") 1, ECF

No. 113. Plaintiffs seek certification under Federal Rule of

Civil Procedure 23(b)(3) ("Rule 23(b)(3)") and argue they have

met all its requirements. Id. 9. They also posit that they

have satisfied the requirements of Federal Rule of Civil

Procedure 23(a) ("Rule 23(a)"). Id.

After careful consideration, the Court has determined to

deny the motion for class certification because the argument

that class action treatment is superior to other alternatives,

as required under Rule 23(b)(3), is untenable.

## II.  ANALYSIS

"A district court must conduct a rigorous analysis of the prerequisites established by Rule 23 before certifying a class," and ensure that all of the requirements of Rule 23(a) and one of the elements of Rule 23(b) are met.  <u>Smilow</u> v. <u>Sw. Bell Mobile Sys., Inc.</u>, 323 F.3d 32, 38 (1st Cir. 2003).  Rule 23(a) requires: (1) numerosity; (2) commonality; (3) typicality; and (4) representativeness.  Fed. R. Civ. P. 23(a).  Rule 23(b)(3), under which the Plaintiffs seek certification, requires that:

> the questions of law or fact common to the members of
> the class predominate over any questions affecting
> only individual members, and that a class action is
> superior to other available methods for the fair and
> efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).

Suffolk University ("Suffolk"), virtually conceding numerosity and commonality, opposes class certification, citing issues with typicality, adequacy, and predominance.  Def. Suffolk Opp'n Pl.'s Mot. Class Cert. ("Def.'s Opp'n Class Cert.") 5-19, ECF No. 133.

This Court has already ordered that the class definition ought be modified to state:

> All students and former students of Suffolk University
> ("Suffolk"), enrolled in in-person/on-campus based
> programs, who paid **tuition**, or **on whose behalf tuition
> payment was made**, to Suffolk in connection with its Spring
> 2020 Semester; excluding students enrolled in Suffolk
> online programs only.

This Court also ordered Mary Anne Foti, Anna Foti's mother, dropped as a class representative, as she lacks Article III standing to bring either of the claims at issue.

## A. Contested Requirements Under Rule 23(a)

### 1. Typicality

The typicality requirement establishes that "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality requires that the class representative's 'injuries arise from the same events or course of conduct as do the injuries of the class,' but his claims need not be 'identical to those of absent class members.'" Henderson v. Bank of N.Y. Mellon, N.A., 332 F. Supp. 3d 419, 427 (D. Mass. 2018) (Saris, J.) (quoting In re Credit Suisse-AOL Sec. Litig., 253 F.R.D. 17, 23 (D. Mass. 2008)). Typicality "is focused on the congruence between particular claims of the named class representatives and the generalized claims that are common to the class." Payne v. Goodyear Tire & Rubber Co., 216 F.R.D. 21, 26 (D. Mass. 2003) (Gertner, J.). It is "not a highly demanding" requirement and "the claims only need to share the same essential characteristics and need not be identical." Id. (quoting Moore's Federal Practice § 23.24[4]). "Even though there may be some differences between [the representative Plaintiffs] and the

putative class members, what matters is that they are bound
together by a common legal theory." Ouadani v. Dynamex
Operations E., LLC, 405 F. Supp. 3d 149, 163 (D. Mass. 2019)
(Saris, J.).  Standing and typicality are related concepts.
Weld v. Glaxo Wellcome Inc., 434 Mass. 81, 88 (2001).

Julia Durbeck and Anna Fotis are both students of Suffolk
University who paid tuition with the expectation of in-person
instruction and access to facilities and in-person
opportunities.  Both were denied this access in the Spring of
2020.  For both students, their claims depend on whether their
expectations for in person instruction were reasonable and based
on Suffolk's promises (creating an implied contract) and on
whether Suffolk breached this implied contract.  This is the
same as the rest of the class's claims.  Suffolk made identical
promises via its advertisements and promotional materials to all
students.

Therefore, Julia Durbeck and Anna Fotis are adequately
typical.

### 2. Representativeness

The representativeness requirement sets out that the
"representative parties will fairly and adequately protect the
interests of the class." Fed. R. Civ. P. 23(a)(4).  In order to
demonstrate that representative plaintiffs are adequate to

represent the class, "[t]he moving party must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985).

Plaintiffs represent that they are adequate because they have spent time actively communicating and consulting with counsel, have no conflicts of interest with the rest of their class, and are represented by counsel with extensive experience in class actions. The Court finds these representations credible and therefore, concludes that Julia Durbeck and Anna Fotis are adequate representatives for the class.

### B. Requirements Under Rule 23(b)(3)

#### 1. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 623 (1997) (citing 7A Wright, Miller, & Kane 518–519.19). "Where . . . common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues

remain," for "the individuation of damages in consumer class actions is rarely determinative under Rule 23(b)(3)." Smilow, 323 F.3d at 40.  As part of the predominance analysis courts determine whether "a sufficient constellation" of common issues exists.  Waste Management Holdings Inc. v. Mowbray, 208 F.3d 288, 296 (1st Cir. 2000).  "The predominance inquiry accordingly involves an individualized, pragmatic evaluation of the relationship between and the relative significance of the common and individual issues."  In re Relafen Antitrust Litig., 218 F.R.D. 337, 343 (D. Mass. 2003).  It is worth noting that "the need for individualized damage decisions does not ordinarily defeat predominance where there are still disputed common issues as to liability."  Tardiff v. Knox Cty., 365 F.3d 1, 6 (1st Cir. 2004)(certifying a class involving improper strip searches, even though the court identified the possibility of varying damages assessments based on lost wages, emotional distress, etc.).

Here common issues as to liability predominate over individualized issues.  There are three key inquiries as to liability: (1) whether Suffolk's promises created an implied contract for an in-person experience with its students or at least a reasonable expectation for in-person services (forming the basis for unjust enrichment); (2) whether it failed to deliver on its promise; and (3) whether there is a difference in value between the online programs offered and in-person programs

of the same sort.  Individualized questions about how much each individual student was damaged (depending on financial aid or scholarships provided by Suffolk) are best suited to the damages stage and do not defeat predominance.  Furthermore, individualized issues such as what programs individuals are enrolled in are also of no consequence, since the general question is whether the contract for in-person education exists and was breached; that question exists and is the same for every student regardless of program.  Varying costs depending on program is a damages stage issue.  Moreover, what courses a student was enrolled in is of no consequence because it is the **program** and not the **course** which is of interest.

The baseline damages calculation can be adjusted depending on individualized factors such as financial aid or scholarships provided by Suffolk or COVID-19 grants provided by Suffolk straight to students.  Cases involving similar implied contract and unjust enrichment claims (based on failure to refund COVID-19 Tuition) have found the predominance element to be met at the class certification stage of settlement:

> The elements of plaintiff's claims are all likely susceptible of classwide proof. All class members are, by definition, current or former students at SNHU who paid tuition and other fees in the expectation of receiving in-person educational services. Due to class members' common status as current or former SNHU students, it is likely that all of them were parties to substantially similar contracts with SNHU (or in the alternative to circumstances giving rise to quasi-contractual obligations as alleged in

the amended complaint). All class members either performed their obligations under their contract with SNHU or otherwise conferred a benefit on SNHU by paying their tuition and fees, and SNHU either breached its contracts with all class members, improperly retained the benefit of their tuition and fee payments, or interfered with their ownership interest in the 'campus experience' by canceling in-person classes for all class members during the spring 2020 semester.

Wright v. S. New Hampshire Univ., 565 F. Supp. 3d 193, 205 (D.N.H. 2021).

To the extent Suffolk raises possible problems with predominance or individualized issues, these do not defeat predominance.

### 2. Superiority

Rule 23(b)(3) also requires this Court to determine that "a class action is superior to other available methods for fairly and efficiently adjudicate ng the controversy." Fed. R. Civ. P. 23(b)(3). The superiority requirement may be met when "there is a real question whether the putative class members could sensibly litigate on their own for these amounts of damages, especially with the prospect of expert testimony required." Gintis v. Bouchard Transp. Co., Inc., 596 F.3d 64, 68 (1st Cir. 2010).

Here there is definitely a question whether individual college students would have the capacity to litigate against Suffolk. First, there is a "considerable disparity in

resources" between a large university like Suffolk and
individual plaintiffs.  Donovan v. Philip Morris USA, Inc., 268
F.R.D. 1, 29 (D. Mass. 2010).  Second, it is unclear whether the
benefit of any damages would outweigh the significant litigation
costs –– here individual recovery is likely to amount to less
than $1,000.  See Garcia v. E.J. Amusements of N.H., Inc., 98 F.
Supp. 3d 277, 292 (D. Mass. 2015)(Gertner, J.).

　　　Yet analysis cannot end here. While this Court has
(properly) denied summary judgment when Suffolk claimed there
were no damages, that determination followed from the Court's
drawing all reasonable inferences in the Plaintiffs' favor as
required by Fed. R. Civ. P. 56.  Order, ECF No. 145; Reeves v.
Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  Rule
23(b)(3) imposes no such requirement and, in this Court's view,
the Plaintiffs' likelihood of proving damages is vanishingly
small so long as this Court maintains its view that evidence
material to the issue of program **quality** implicates educational
malpractice, a claim this Court has foreclosed. Order, ECF No.
145.

　　　In these circumstances, class adjudication is simply not
superior to individual or aggregate litigation as a practical
matter. This is not a case where complex expert testimony
predominates. It is, rather, a "what happened" case, one that
depends on what reasonably can be inferred from Suffolk's own

statements, advertising, and the like coupled with the evidence
of what education was actually offered.

Even putting aside the complexities of managing a case
where the unjust enrichment claim is denied class action status,
consider the following scenarios:

1. The Court certifies the class as to the implied contract
   claim and the case goes forward to trial.  Should the
   Plaintiffs lose -- as appears very likely due to their
   inability to prove damages -- then the implied contract
   claim of the entire plaintiff class will have been
   finally adjudicated.

2. The Court denies class certification and the case
   proceeds to trial.  The named plaintiffs lose.  The
   remainder of the class is not disadvantaged.  The statute
   of limitations was tolled during the pendency of this
   putative class.  Crown, Cork & Seal Co. v. Parker, 462
   U.S. 345, 354, 103 S. Ct. 2392, 2397-98, 76 L. Ed. 2d 628
   (1983).  Any former class member who wishes may proceed
   with these or refined claims in another, arguably more
   friendly venue.

3. The Court denies class certification.  The named
   plaintiffs proceed to trial and, to the Court's surprise,
   they win.  At this juncture, those putative class members
   who wish may bring their own claims armed with the

liability finding which, due to offensive collateral
estoppel, may bind Suffolk in these subsequent
proceedings.  Parklane Hosiery Co. v. Shore, 439 U.S.
322, 331, 99 S. Ct. 645, 651, 58 L. Ed. 2d 552 (1979).
To avoid this result, Suffolk may well settle with the
named plaintiffs, buying them off to avoid the risk of
loss.

4. The Court denies class certification.  As with scenarios
2 and 3 above, this Court will then lack subject matter
jurisdiction over this diversity case in view of the
damages at issue for each individual plaintiff.  The
Court must thus dismiss this case without prejudice on
that ground.  The Plaintiffs appeal.  This Court is
affirmed.  The case then proceeds as described in
scenarios 2 or 3.

5. The Court denies class certification.  The plaintiffs
appeal.  This Court is reversed either because its view
of potential damages is too restrictive, its view of its
powers under Rule 23 (b) (3) is too extensive, or any
combination of the two. The case then proceeds in
accordance with the instructions of the Court of Appeals.

6. While the appeal posited in scenarios 5 and 6 is pending,
the case settles -- Suffolk buying peace from the
Plaintiff class and everyone getting a little something.

Of course, this would require approval of this Court which expresses no opinion thereon beyond noting that the law appears to favor settlement classes more than litigation classes. See e.g. In re Relafen Antitrust Litig., 231 F.R.D. 52, 68 (D. Mass. 2005); In re Lupron Mktg. and Sales Practices Litig., 228 F.R.D. 75, 88 (D. Mass. 2005)(Stearns, J.); City P'ship Co. v. Atlantic Acquisition Ltd. P'ship, 100 F.3d 1041, 1043 (1st Cir. 1996)).

Scenario 1 is the least "fair" of all these various possibilities. All the others (scenarios 2-6) are more "efficient" in terms of the aggregate costs imposed on these litigants and only scenarios 4 and 5 (which posit a full appeal to a final appellate decision) are likely to take longer to final judgment. As a practical matter, therefore, this Court simply cannot conclude that class action treatment is either "superior" or more just than the available alternatives.

## III. CONCLUSION

For these reasons, the motion to certify class (ECF. No. 112) is DENIED.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[1]

---

[1] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents.  Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 44 years.